**Phillip Wight et al.**

                                        Case No. 18-cv-812-PB
    v.                                  Opinion No. 2018 DNH 230

**D'Amante Pellerin Associates et al.**


### MEMORANDUM AND ORDER


This action stems from a business venture that ended under
less than amicable circumstances. <u>Pro</u> <u>se</u> plaintiff Phillip
Wight has sued ten defendants, including his former business
partner, his partner's lawyers, and various state and federal
entities. Construed generously, the complaint attempts to
assert claims for negligence under state law and discrimination
in violation of the Americans with Disabilities Act ("ADA") and
Section 504 of the Rehabilitation Act. Five defendants have
moved to dismiss the complaint. I dismiss the complaint in its
entirety without prejudice but give Wight thirty days to file an
amended complaint.


## I.  BACKGROUND

Wight has bipolar disorder and has been receiving
supplemental security income ("SSI") for most of his life. In
2010, he partnered with Keith Richard to establish a company
called Big Green Recycling LLC ("Big Green"). The two agreed

that Wight would own 40% and Richard 60% of the company.
Richard's lawyers at D'Amante Pellerin Associates ("D'Amante")
helped execute the requisite documents to form Big Green.  Wight
became Vice President and Director of Operators, with authority
to manage money in Big Green's accounts at TD Bank.

In an effort to grow the business, Wight sought to
participate in the Plan to Achieve Self-Support ("PASS"), a
program that the Social Security Administration ("SSA") offers
to disabled individuals.  The agency denied his request.  He
also approached the New Hampshire Vocational Rehabilitation
Bureau and the New Hampshire Small Business Development Center
to seek financial support and access to unidentified programs
and services to which he was allegedly entitled because of his
disability.  The Vocational Rehabilitation Bureau refused to
help him and although staff from the Small Business Development
Center met with Wight on several occasions, they were unable to
help him because he did not have the company's business records.
Undeterred, Wight worked hard and grew a successful business.

After Wight operated the company for a year and a half,
Richard orchestrated a corporate takeover.  He locked Wight out
of Big Green's offices, cancelled a business credit card, and
disabled Wight's access to the company's accounts at TD Bank.
Wight sought legal assistance from the Disability Rights Center
and New Hampshire Legal Aid, but they refused to help him.

Wight then engaged a private attorney, who helped him negotiate a settlement with Richard, who was then represented by D'Amante. In a settlement agreement, Wight accepted $20,000 and reimbursement of his attorney's fees in exchange for Wight's ownership share in the company and his agreement not to solicit Big Green's customers for one year. Wight alleges that because of his disability he did not know that the company was worth significantly more than he was paid, and that Richard and D'Amante "took advantage" of him. See Compl. ¶ 25. Big Green received a grant for $60,000 after the settlement.

Wight used the proceeds of the settlement to form a new company, All Clean and Green Recovery Services LLC ("All Clean"). Wight could not open business accounts at TD Bank without management approval because he had been taken off Big Green's accounts.

Once again, Wight went to the SSA's PASS program, the Vocational Rehabilitation Bureau, and the Small Business Development Center for help with his new business, but they all refused him. Wight then sought assistance from Senator Jeanne Shaheen's office. Her staff contacted the Small Business Development Center on Wight's behalf, which again did not help him. Next, Wight went to then-Governor Maggie Hassan's office. Her staff promised to help him many times but, in the end, all

they did was tell Wight that the Small Business Development Center would be looking into his request.

Wight alleges that all defendants knew he was disabled and that they discriminated against him based on his disability.  As a result, he has suffered mental breakdowns and depression.

Wight also claims that the SSA "took money out of [his] checks for 30 years."  Compl. ¶ 36.  In an affidavit, a representative of the SSA has stated that, over the years, the agency made 15 separate determinations to assess Wight for overpayments and recouped approximately $5,000 from his benefits.  Doc. No. 8-1 ¶ 6(f).  The SSA has no records that Wight filed any administrative appeals related to those recoupments.  Id.  According to its records, the SSA sent Wight information about the PASS program, but he never submitted the requisite forms or filed any administrative appeals relating to his eligibility for the program.  Id. ¶ 6(b).


## II.  STANDARD OF REVIEW

The SSA has moved to dismiss based on Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  Other defendants challenge the complaint's sufficiency under Rule 12(b)(6).  I address the standard under each rule in turn.

**A. Rule 12(b)(1) Motion to Dismiss**

When subject-matter jurisdiction is challenged under Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (internal quotation marks omitted). Thus, if a plaintiff sues in federal court, the burden to establish jurisdiction is on the plaintiff. See id. When the plaintiff instead files suit in state court and the defendant removes the action to federal court, the onus shifts to the defendant to demonstrate that federal jurisdiction exists. Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). If federal jurisdiction is challenged after removal is accomplished, however, the burden is assigned to the party asserting jurisdiction at that time. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006); Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 289 (1st Cir. 2013).

The SSA removed this case to federal court and is now challenging subject-matter jurisdiction because Wight has failed to exhaust his administrative remedies. Although Wight has not responded to the SSA's motion in writing, at a hearing held on November 5, 2018 ("November hearing"), he indicated that he wished to press his claims in this court. Accordingly, it is incumbent on Wight to demonstrate that the court has jurisdiction over his claims.

In determining whether Wight has met his burden, I must construe the complaint liberally, treat all well-pleaded facts as true, and view them in the light most favorable to Wight. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). I may also consider extrinsic evidence, such as exhibits and affidavits, without converting the motion to dismiss into one for summary judgment. See, e.g., Carroll v. United States, 661 F.3d 87, 94 (1st Cir. 2011); Pitroff v. United States, No. 16-CV-522-PB, 2017 WL 3614436, at *3 (D.N.H. Aug. 22, 2017).

**B. Rule 12(b)(6) Motion to Dismiss**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In testing a complaint's sufficiency, I employ a two-step approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I screen the complaint for statements that "merely offer legal conclusions couched as fact

or threadbare recitals of the elements of a cause of action."
Id. (internal quotation marks and alterations omitted).  A claim
consisting of little more than "allegations that merely parrot
the elements of the cause of action" may be dismissed.  Id.
Second, I credit as true all non-conclusory factual allegations
and the reasonable inferences drawn from those allegations, and
then determine if the claim is plausible.  Id.  The plausibility
requirement "simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence" of illegal
conduct.  Twombly, 550 U.S. at 556.  The "make-or-break
standard" is that those allegations and inferences, "taken as
true, must state a plausible, not a merely conceivable, case for
relief."  Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628
F.3d 25, 29 (1st Cir. 2010).


### III.  ANALYSIS

Construed liberally, the complaint appears to assert claims
pursuant to Title II of the ADA, Title III of the ADA, Section
504 of the Rehabilitation Act, and common-law negligence.[1]  I
address the claims against each group of defendants in turn.

---

[1]     To the extent Wight also intended to assert claims under
the state anti-discrimination laws, the only potentially
applicable statute prohibits disability-based discrimination in
public accommodations.  See N.H. Rev. Stat. Ann. § 354-A:17.
Wight's claims under this statute fail for the same reasons as
his claims under Title III of the ADA, its federal analog.

**A. Claims against the SSA**

Wight appears to allege that the SSA was negligent or acted with discriminatory animus in violation of Section 504 of the Rehabilitation Act[2] when the agency (1) wrongfully recouped money from his disability benefits, and (2) denied him the opportunity to participate in the PASS program.  Wight does not allege that he presented his claims to the agency or exhausted his administrative remedies.  The SSA has declared in an affidavit that he did neither.  See Doc. No. 8-1.  The SSA argues that Wight's failure to comply with these requirements deprives the court of subject-matter jurisdiction.  I agree.

Federal jurisdiction to review a claim "arising under" the Social Security Act is limited to a final decision of the SSA, requiring a plaintiff to present the claim to the agency and exhaust administrative remedies before filing a lawsuit.  Wilson v. Sec'y of Health & Human Servs., 671 F.2d 673, 677 (1st Cir. 1982); see 42 U.S.C. § 405(h).  Claims "arise under" the Social Security Act when the Act "provides both the standing and the substantive basis for the presentation" of the claim, Weinberger v. Salfi, 422 U.S. 749, 760–61 (1975), or the claim is "inextricably intertwined" with a claim for Social Security benefits.  See Heckler v. Ringer, 466 U.S. 602, 614 (1984).  The

---

[2]    Section 504 bars federal agencies and recipients of federal funds from discriminating based on disability.  29 U.S.C. § 794.

Supreme Court in Shalala v. Illinois Council on Long Term Care, Inc. explained that a claim "arises under" the Social Security Act when (1) an individual seeks a benefit from the agency, including money, non-monetary benefits, or program eligibility, (2) the agency denies the benefit, and (3) the individual challenges the denial, regardless of whether the challenge is based on evidentiary, rule-related, statutory, constitutional, or other legal grounds. See 529 U.S. 1, 10, 13-14 (1999). Lower courts have interpreted the Supreme Court precedent as giving the "arising under" language a broad scope and have extended it to claims brought under Section 504 of the Rehabilitation Act.[3]

Wight's claims against the SSA "arise under" the Social Security Act. The claim that the SSA wrongfully recouped money from his SSI payments is a claim related to monetary benefits.

---

[3] See Henderson v. Colvin, No. 6:14-CV-1053-PA, 2015 WL 6598713, at *2 (D. Or. Oct. 29, 2015); Quinones v. UnitedHealth Grp. Inc., No. CIV. 14-00497 LEK, 2015 WL 3965961, at *6 (D. Haw. June 30, 2015); Shenk v. Soc. Sec. Admin., No. 12-CV-4370 SLT, 2012 WL 5196783, at *10 (E.D.N.Y. Oct. 19, 2012); Doe v. Astrue, No. C 09-00980 MHP, 2009 WL 2566720, at *4-5 (N.D. Cal. Aug. 18, 2009); Imamoto v. Soc. Sec. Admin., No. Civ. 08-00137 JMS/KSC, 2008 WL 5179104, at *3-4 (D. Haw. Dec. 9, 2008); Davis v. Astrue, 513 F. Supp. 2d 1137, 1143-44 (N.D. Cal. 2007). But see Am. Council of Blind v. Astrue, No. C 05-04696 WHA, 2008 WL 1858928, at *5-6 (N.D. Cal. Apr. 23, 2008) (where plaintiffs challenged the SSA's failure to communicate with blind individuals in an accessible format in violation of the Rehabilitation Act, claims did not arise under the Social Security Act because "plaintiffs' grievance is untethered to any benefit claim and relates only to notices").

The claim that the SSA denied him the opportunity to participate in the PASS program is a claim concerning program eligibility. It is inapposite that Wight contests these actions as negligent or discriminatory based on his disability. The determinative factor is that the allegations center on the SSA's actions related to Wight's benefits--all decisions made pursuant to the Social Security Act. Thus, Wight is required to present his claims to the SSA and exhaust his administrative remedies.

A claim that arises under the Social Security Act must be "presented" to the SSA and the claimant must exhaust proscribed administrative remedies. Although the presentment requirement is nonwaivable, the court may waive the exhaustion requirement "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." Matthews v. Eldridge, 424 U.S. 319, 328, 330 (1976). In determining whether to waive exhaustion, courts consider (1) whether the claim is "entirely collateral to the claim for benefits that would be the subject of the administrative appeals process"; (2) whether the plaintiff has "presented a colorable claim that [he] will be irreparably harmed absent judicial waiver of exhaustion"; and (3) "the practical considerations that bear on waiving the exhaustion requirement judicially." Justiniano v. Soc. Sec. Admin., 876 F.3d 14, 27-29 (1st Cir. 2017). None of these factors counsels

in favor of waiving the exhaustion requirement here.  First,
Wight's claims that the SSA wrongfully recouped monies from his
SSI payments and denied him access to the PASS program are
straightforward claims for benefits that could be the subjects
of administrative appeals.  Second, there is no indication that
requiring exhaustion would cause Wight irreparable harm.  Third,
Wight's claims do not present any of the circumstances that
courts typically consider when analyzing the practical reasons
to waive exhaustion.  See id. at 29-31 (discussing some of those
circumstances).

Because there is no basis to waive the exhaustion
requirement, I dismiss the claims against the SSA without
prejudice to Wight's right to challenge any adverse rulings once
he has obtained a final decision from the agency.[4]

### B. Claims against state defendants

The three state entities that Wight has sued are the New
Hampshire Department of Health and Human Services, the
Vocational Rehabilitation Bureau, and the Small Business
Development Center, which is a program operated by the
University of New Hampshire Peter T. Paul College of Business
and Economics.  Wight appears to assert claims of negligence and

---

[4]    At the November hearing, I directed counsel for the SSA to
identify an agency representative familiar with Wight's claims
for benefits to review with Wight the status of his claims and
advise him of his administrative appeal rights.

discrimination in violation of Title II of the ADA against all three state defendants. The Small Business Development Center has moved to dismiss the claims against it for failure to state a claim. Because Wight's claims against all three state defendants fail the Iqbal/Twombly plausibility test, I dismiss them without prejudice.[5]

The complaint fails to allege facts to support a negligence claim against any state defendant. To state a claim for negligence, Wight must allege that (1) a defendant owed him a duty, (2) the defendant breached this duty, and (3) the breach proximately caused his injuries. Macie v. Helms, 156 N.H. 222, 224 (2007). Wight merely alleges that the state defendants refused to help him when he sought assistance with his businesses. He does not explain what help he was seeking, why the state defendants had a legal obligation to provide that help, or how they failed to provide it. Without facts that could support the existence of a legal duty or that a breach of that duty caused his injuries, the claims are not plausible.

---

[5]     Counsel for the Department of Health and Human Services and the Vocational Rehabilitation Bureau argued at the November hearing that the state court dismissed his clients after the notice of removal was filed in federal court but before it was filed in state court. Because counsel did not brief a motion to dismiss based on the state court ruling, I do not consider whether the state court order provides a basis for dismissal.

Similarly, Wight's allegations that the state defendants discriminated against him because of his disability are insufficient.  To state a claim under Title II of the ADA, Wight must allege that (1) he is "a qualified individual with a disability"; (2) he was "either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against"; and (3) "such exclusion, denial of benefits or discrimination was by reason of his disability." Toledo v. Sanchez, 454 F.3d 24, 31 (1st Cir. 2006).  A "qualified individual with a disability" is defined as "an individual with a disability who . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "public entity" includes state and local governments, as well as their agencies and instrumentalities. Id. § 12131(1).

The state defendants fall within the ambit of Title II as agencies or instrumentalities of the State of New Hampshire.[6] Although Wight did not specify his disability in the complaint, he stated at the November hearing that he suffers from bipolar disorder, which can qualify as a disability within the meaning

---

[6]    Because a public university is deemed an instrumentality of the state, I assume that the Small Business Development Center is a public entity as a UNH program.  See Toledo, 454 F.3d at 32.

of the ADA.  See Reed v. LePage Bakeries, Inc., 244 F.3d 254,
257 & n.1 (1st Cir. 2001).  The remaining elements of a Title II
claim, however, are not sufficiently pleaded.  Wight does not
specify which services he sought from the state defendants or
why he was eligible for those services.  More importantly, he
alleges no facts to support his bare allegation that the state
defendants denied him any services because of his disability.
The fact that the state defendants refused to help Wight with
his businesses does not permit a reasonable inference that they
did so because of his disability.  Cf. Lebron v. Commonwealth of
P.R., 770 F.3d 25, 31 (1st Cir. 2014) ("Simply alleging in a
conclusory fashion that the defendants engaged in 'intentional
discrimination,' as does the complaint here, is not enough to
satisfy the pleading standard.").  Thus, the claims against the
state defendants are dismissed without prejudice.[7]

**C. Claims against New Hampshire Legal Aid**

Wight's sole allegation against New Hampshire Legal Aid is
that it refused to provide him legal assistance when he
complained that Richard forced him out of their business
venture.  That is not enough to state a cognizable claim.

---

[7]    To the extent Wight intended to base his discrimination
claims against the state defendants on Section 504 of the
Rehabilitation Act, they are also deficient because he has not
alleged that the defendants are recipients of federal funds.
See 29 U.S.C. § 794.

14

To the extent Wight claims that Legal Aid was negligent, he has not alleged facts showing that Legal Aid owed him a legal duty or that it engaged in any conduct that breached that duty. See Macie, 156 N.H. at 224. Legal Aid has limited staff and resources and is not required to represent every disabled person that comes through its doors.

Assuming he claims that Legal Aid refused to represent him because of his disability, Wight could be asserting a claim under Title III of the ADA, which addresses discrimination in public accommodations and services operated by private entities.[8] See 42 U.S.C. § 12181(7)(F) ("office of . . . lawyer" may be considered public accommodation). To state a Title III claim, Wight must allege that (1) he is disabled within the meaning of the ADA, (2) the defendant is a private entity that owns or operates a place of public accommodation, (3) the defendant has a discriminatory policy or practice in effect, and (4) the defendant denied Wight's request for an accommodation that would have afforded him access to the desired service. Mottram v. Wells Fargo Bank, N.A., No. 15-CV-470-PB, 2016 WL 917905, at *2

<hr/>

[8]    Wight cannot bring a Title II claim against Legal Aid because Legal Aid is not an agency or instrumentality of a state or local government. See 42 U.S.C. § 12131(1). Similarly, he has not alleged that Legal Aid is subject to the mandates of Section 504 of the Rehabilitation Act as a recipient of federal funds. See 29 U.S.C § 794.

(D.N.H. Mar. 8, 2016); see Dudley v. Hannaford Bros. Co., 333 F.3d 299, 307 (1st Cir. 2003).

The complaint does not state facts to substantiate such a claim.  There are no facts suggesting that Legal Aid actually discriminated against Wight, had a discriminatory policy or practice in effect, or denied Wight's request to accommodate his disability.  All claims against Legal Aid are therefore dismissed without prejudice.

**D. Claims against TD Bank**

The allegations concerning TD Bank suggest that Richard disabled Wight's access to Big Green's accounts at the bank without Wight's authorization.  When Wight later tried to open accounts at TD Bank for his new business, a bank employee said that management approval was needed because Wight had been removed from Big Green's accounts.  These facts do not give rise to a plausible cause of action against TD Bank.

Assuming Wight is alleging that TD Bank was negligent with respect to how the business accounts were handled, he has failed to allege facts that could plausibly suggest liability.  A relationship between a bank and a depositor is ordinarily contractual in nature and does not give rise to a fiduciary relationship.  Ahrendt v. Granite Bank, 144 N.H. 308, 311 (1999).  A duty of care in this context does not arise unless the relationship is "special."  Id. at 314.  Nothing in the

complaint suggests such a relationship.  Because Wight has not
alleged facts to show that the bank owed him a duty of care or
that it breached that duty, the negligence claim fails as a
matter of law.

If Wight is claiming that TD Bank discriminated against him
because of his disability, a Title III claim cannot pass muster
because Wight does not allege facts suggesting that TD Bank in
fact discriminated against him, had a discriminatory policy or
practice in effect, or denied his request for an accommodation
of his disability.  See Mottram, 2016 WL 917905, at *2.  Thus,
the claims against TD Bank are dismissed without prejudice.

### E. Claims against Richard and D'Amante

The claims that Wight appears to assert against Richard and
D'Amante are the same claims asserted against the other
defendants: negligence and discrimination based on disability.
In support, Wight alleges that Richard squeezed him out of their
company by locking him out of Big Green's offices and removing
him from the company's bank accounts.  Represented by counsel,
Wight later settled with Richard.  Now he alleges that Richard
and D'Amante "took advantage" of him by paying substantially
less for Wight's share of the company than it was worth.

The claims that Richard and D'Amante are liable for
negligence must be dismissed because the complaint fails to
identify a duty that either defendant breached.  "Absent a duty,

there is no negligence." Christen v. Fiesta Shows, Inc., 170 N.H. 372, 375 (2017). Similarly, although the complaint alludes to negligent misrepresentations during the settlement negotiations, Wight does not identify any material fact that Richard or D'Amante misrepresented. See Snierson v. Scruton, 145 N.H. 73, 78 (2000). Specifically, the complaint does not identify any representations that were made concerning the value of the company or otherwise explain how Richard and D'Amante "took advantage" of Wight.[9] The claims sounding in negligence are thus dismissed.[10]

The claims that Richard and D'Amante discriminated against Wight based on his disability likewise cannot stand. Richard is not subject to suit under the ADA absent allegations that he

---

[9] There is even less support for a claim of fraudulent misrepresentation, which requires allegations that a representation was made "with knowledge of its falsity or with conscious indifference to its truth" with the intention to cause Wight to rely upon it. Tessier v. Rockefeller, 162 N.H. 324, 332 (2011) (internal quotation marks omitted).

[10] Although in certain circumstances a member of an LLC can bring a claim for breach of fiduciary duty against other members, Wight does not assert such a claim against Richard. See, e.g., N.H. Rev. Stat. Ann. §§ 304-C:110, C:111. Moreover, even if Wight had attempted to plead a breach of fiduciary duty claim he would need to overcome another obstacle to succeed on such a claim because Wight concedes that he accepted a payment from Richard to "settle," which likely bars any claim for breach of fiduciary duty. See Compl. ¶ 25. Because release is an affirmative defense and Richard has not raised it, I need not determine whether a potential breach of fiduciary duty claim would be barred by the alleged settlement. See Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29, 32 (1st Cir. 1991).

operated a public accommodation.  Although D'Amante might be considered a public accommodation for purposes of Title III, Wight does not allege facts from which I could reasonably infer that D'Amante in fact discriminated against him, had a discriminatory policy or practice in effect, or denied Wight's request to accommodate his disability.  See Mottram, 2016 WL 917905, at *2.  Accordingly, I dismiss Wight's claims against Richard and D'Amante without prejudice.

**F. Motion for appointment of counsel**

Wight requests that counsel be appointed to represent him because he is financially unable to hire an attorney (Doc. No. 15).  There is no constitutional right to appointment of counsel in a civil case.  Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986).  Section 1915 of Title 28 of the U.S. Code gives courts the discretion to appoint counsel to an indigent litigant who demonstrates that "exceptional circumstances [are] present such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).  In determining whether the circumstances are "exceptional," I must consider the totality of the circumstances, including the merits of the case, the complexity of the legal and factual issues, and the ability of the litigant to represent himself.  Id. at 24.

There are no exceptional circumstances here.  First, Wight has not stated a viable claim against any defendant, so I cannot conclude that his case has potential merit.  Second, the issues are not inordinately complex.  Third, although he has bipolar disorder, Wight stated that he does not suffer from an intellectual disability, and he has drafted an articulate complaint, which suggest he can represent himself, at least at this preliminary stage.  I deny the request for counsel without prejudice to Wight renewing it if he files an amended complaint.

### IV.  CONCLUSION

For the foregoing reasons, defendants' motions to dismiss (Doc. Nos. 8, 18, 24, 28, 30) are granted.  All claims against all defendants are dismissed without prejudice.[11]  Wight has thirty (30) days to amend his complaint should he choose to do so.  If an amended complaint is not filed within 30 days, judgment will be entered for the defendants and Wight may take an appeal.  If All Clean is named as a plaintiff in an amended complaint, counsel must enter an appearance on the company's

---

[11]    The complaint names as defendants two entities that are not legally cognizable, "Democratic Senate Department of NH" and "Governor Hassan's Citizen's Department."  At the November hearing, Wight disclaimed any intent to sue these entities. They are dismissed without prejudice to Wight asserting claims against persons or cognizable entities he intended to sue.

behalf pursuant to Local Rule 83.6(c), which states that a corporation cannot proceed pro se.

The SSA's motion to substitute Nancy A. Berryhill, Acting Commissioner of the SSA, for "SSI-Supplemental Security Income" as the proper defendant (Doc. No. 7) is granted. The SSA's motion to stay proceedings until resolution of the motions to dismiss (Doc. No. 32) is denied as moot.

Wight's motion for appointment of counsel (Doc. No. 15) is denied without prejudice. Wight's motion for change of venue to the U.S. Supreme Court (Doc. No. 16) is denied.

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

November 27, 2018

cc:  Phillip Wight, pro se
     All Clean and Green Recovery Services, LLC, pro se
     Andru H. Volinsky, Esq.
     Hilary Holmes Rheaume, Esq.
     T. David Plourde, Esq.
     Francis Charles Fredericks, Esq.
     Karyl Roberts Martin, Esq.
     Jeanine M. Girgenti, Esq.
     Russell F. Hilliard, Esq.
     Brooke Lois Lovett Shilo, Esq.
     Elizabeth M. Lacombe, Esq.
     Kathryn M. Bradley, Esq.